Scott F. Gautier (State Bar No. 211742)
*SGautier@RobinsKaplan.com*
Lorie A. Ball (State Bar No. 210703)
*LBall@RobinsKaplan.com*
Kevin D. Meek (State Bar No. 280562)
*KMeek@RobinsKaplan.com*
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

*Proposed Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

NASTY GAL INC., a California corporation,

Debtor and Debtor in Possession.

Case No. 2:16-bk-24862-BB

Chapter 11

**EMERGENCY MOTION OF DEBTOR FOR ORDER AUTHORIZING AND APPROVING (A) USE OF CASH COLLATERAL AND (B) GRANT OF ADEQUATE PROTECTION TO SECURED CREDITOR**

**Hearing:**

Date: November 14, 2016
Time: 10:00 a.m.
Place: Courtroom 1539
255 East Temple Street
Los Angeles, CA 90012

Nasty Gal Inc. (the "**Company**" or the "**Debtor**"), the debtor and debtor in possession in the above-captioned chapter 11 case, hereby moves on an emergency basis for an interim Order substantially in the form attached hereto as Exhibit B (the "**Interim Order**") authorizing (1) the Debtor to use the cash collateral of Hercules Technology Growth Capital, Inc., a Maryland Corporation ("**Agent**"), in its capacity as administrative agent for itself and for certain lender parties (collectively referred to as "**Lender**"), (2) authorizing adequate protection, and (3) setting



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

a final hearing on the motion (the "**Motion**"). Pursuant to Local Bankruptcy Rule 4001-2, attached hereto as Exhibit C is the *Debtor's Statement Regarding Cash Collateral Or Debtor In Possession Financing*. In support of the Motion, the Debtor separately filed the *Declaration of Joe Scirocco In Support of First Day Motions* (the "**First Day Declaration**").

**EMERGENCY RELIEF IS REQUIRED**

The Company is a retailer that specializes in fashion for young women. Through its on-line sales and two physical stores located in Santa Monica and Hollywood, California, the Company generates approximately $80 million in annual sales and has more than 550,000 customers in over 60 countries. Because the Lender alleges that substantially all of the Debtor's assets are Lender's collateral, primarily consisting of cash, merchandise inventory and business trademarks, the Debtor will not be able to operate in chapter 11 unless it is authorized to use the Lender's cash collateral.

Among other immediate expenses, the Debtor needs use of cash collateral to pay payroll, rent, merchandise costs, utilities and other critical expenses. The next employee payroll will be on November 25, 2016 in the approximate amount of $512,000. Merchandise payments each week are estimated to be over $400,000. If the Debtor cannot timely pay employees and its additional expenses, there will be immediate and irreparable harm to the Debtor, the estate, and creditors.

The Debtor has attempted, but has been unable to negotiate reasonable terms for the consensual use of cash collateral with the Lender prior to filing its voluntary chapter 11 petition. The Debtor was forced to immediately file its case when, among other things, the Lender began taking all of the Debtor's available cash from a jointly-controlled account. The Debtor is hopeful that a consensual agreement can still be reached with the Lender, possibly even before a hearing on this Motion. However, pending completion of the negotiations with the Lender and finalization of a consensual agreement, the Debtor requires an order from this Court authorizing the use of cash collateral on an interim basis pending a final hearing so that the Debtor can pay its immediate critical expenses pending the final hearing.

As set forth in the 13-week Budget attached hereto as Exhibit A, the Debtor seeks



ROBINS KAPLAN LLP ATTORNEYS AT LAW LOS ANGELES

authority to use approximately $3,449,000 through the first four weeks of this case on an interim basis pending a final hearing on the Motion within that time.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**JURISDICTION AND VENUE**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue of the Case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 361, 363 and 503 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure ("**FRBP**") and Rule 4001-2 of the Local Bankruptcy Rules for the Central District of California (the "**Local Bankruptcy Rules**").

**II.**

**STATEMENT OF FACTS**

**A. Background Facts**

On the date hereof (the "**Petition Date**"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in this chapter 11 case.

Information regarding the Debtor's business and the circumstances leading to the commencement of this chapter 11 case is set forth in the Declaration of Joe Scirocco In Support of First Day Motions (the "**First Day Declaration**"), which has been filed with the Court contemporaneously herewith.[1]

The Debtor is party to that certain Loan and Security Agreement dated November 6, 2015, by and between Nasty Gal Inc., as borrower, and Agent, in its capacity as administrative agent for

[1] Capitalized terms not otherwise herein defined shall have the meanings ascribed to such terms in the First Day Declaration.



ROBINS KAPLAN LLP ATTORNEYS AT LAW LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

the Lender, pursuant to which the Debtor borrowed $15 million from Lender (the "**Loan**"). The Lender alleges that the Loan is secured by a lien on substantially all of the Debtor's assets.[2] The Loan is subject to the following documents (the "**Loan Documents**"):

1. Loan and Security Agreement dated November 6, 2015 by and between the Company and the Lender;

2. Intellectual Property Security Agreement dated November 6, 2015 by and between the Company and the Lender; and

3. Warrant Agreement To Purchase Preferred Stock of Nasty Gal Inc., dated as of November 6, 2015 between the Company and one of the Lenders, Hercules Technology III, L.P.

Pursuant to the terms of the Loan, the Debtor has made interest-only payments to Lender from November 2015 through the Petition Date. Thus, as of the Petition Date, the Debtor was indebted to the Lender in the amount of $15 million, comprised of all principal.

At all times prior to the Petition Date, the Debtor has remained current on all payments due to the Lender.

**B. The Debtor's Need To Use Cash Collateral**

As a clothing and fashion retailer whose value is dependent on use of inventory and cash flow, the Debtor must continue to operate in order to preserve the Debtor's going concern value. The Debtor has prepared a 13-week budget (the "**Budget**"), attached hereto as Exhibit A, that sets forth the Debtor's anticipated cash needs through February 4, 2017. As set forth in the Budget, the Debtor requires the immediate use of cash to meet the on-going expenses of operating its business, including making the next employee payroll on November 25, 2016 in the approximate amount of $512,000 and paying payroll taxes and related employee expenses, as well as payments to trade vendors for post-petition purchases, payment of rent, utility deposits (if required), telephone, insurance, payments to other parties that supply goods and services to the Debtor post-petition and other necessary expenses associated with the administration of the bankruptcy estate. Further, the Debtor pays over approximately $400,000 per week for clothing and other fashion

[2] The Debtor reserves the right to investigate the validity, priority and enforceability of the Lender's lien.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

merchandise and requires immediate use of cash to replenish inventory and continue ordinary course business operations. With respect to the purchase of inventory, the Debtor uses a number of vendors and the Debtor is currently negotiating with those suppliers to continue the existing beneficial trade terms on a going forward basis. As reflected in the Budget, the Debtor projects that its cash balance will increase from approximately $1,182,000 on the Petition Date to approximately $4,743,000 on February 4, 2017.[3]

The Debtor has cash on hand and expects to generate cash from continuing sales. As set forth in the Budget, the Debtor projects that such cash will be sufficient to fund its chapter 11 administrative expenses, including approximately $750,000 in professional fees during the first six months in the case.

Because projections are forward-looking, they can never be entirely accurate. Thus, to protect the Debtor from fluctuations in expenses and costs, the Debtor requests that it be permitted to have the flexibility to increase expenditures by up to 20% for any particular line item in the Budget, and 15% in the aggregate. Under this structure, the Debtor believes it will have the flexibility to operate its business without disruption.

The Debtor will attempt, prior to a final hearing on the cash collateral motion, to negotiate a consensual cash collateral agreement with the Lender. If and when a consensual agreement is reached, the Debtor will file a supplement to the cash collateral motion describing the terms of the consensual agreement and requesting that the Court approve the consensual agreement at the final hearing. If for any reason a consensual agreement is not reached before the final hearing, the Debtor will request that the Court approve the Budget at the final hearing.

## III.

## THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL

Section 363(c)(2) of the Bankruptcy Code provides that a debtor may not use cash collateral without either the consent of the secured party or an order of the court. Section 363(e)

[3] The Debtor will need to adjust these numbers to account for the cash sweep that Lender made on the Petition Date. At the time of the filing, the Debtor was trying to assess the value of the amounts that the Lender seized from its bank account(s) and other actions that the Lender may have taken.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

provides that a court may condition the debtor's use of cash collateral on the debtor providing "adequate protection" of the secured party's interest in the collateral being used. The protection for the secured creditor is against diminution in the value of the cash collateral used by the debtor.

Adequate protection, by its nature, must be determined on a case by case basis. *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Adequate protection is not intended to nor need it stand as an absolute guarantee to the secured creditor that it will receive the value of its interest in the cash collateral. *In re McCombs Props. VJ, Ltd.*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988). The use of cash collateral for the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor for use of those funds. *In re Oak Glen R-Vee*, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981). Additionally, the Ninth Circuit has long held that an equity cushion is a classic form of adequate protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). The type of adequate protection that is appropriate in a particular case will depend on the nature of the case; in this case, the Lender enjoys several types of protection.

**A. The Lender Is Adequately Protected Because It Enjoys A Value Cushion.**

The Ninth Circuit has long held that a "value cushion"—a positive difference between the value of the Lender's collateral and the Debtor's obligations—is a classic form of adequate protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984). In Mellor, the Court held that the existence of a "value cushion," standing alone, constitutes adequate protection of a secured lender. The Court indicated that a 20% cushion suffices as adequate protection for a secured creditor. Id. at 1401, 1402.

If the Debtor is permitted to use the Lender's cash collateral to fund operations and continue the business as a going-concern, the Debtor believes that it's going-concern value is approximately $25 million. This estimate is derived by applying a multiple to annualized proforma EBITDA of $3 to $5 million. Annualized proforma EBITDA is used for valuation purposes because the Company has not historically generated positive earnings or cash flow. Considered differently, the estimated $25 million valuation could also be derived from the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

combined value of the Company's inventory, sold in the normal course of business, together with the value of its intellectual property.

**B. The Lender Is Adequately Protected Because There Is No Projected Diminution In The Value Of Its Cash Collateral.**

A secured creditor is adequately protected where, as here, the value of its collateral increases and the cash collateral is used to maintain and preserve the creditor's collateral. *See, e.g., In re Mellor*, 734 F.2d 1389 (9th Cir. 1984); *In re McClure*, 2015 WL 1607365, at *6 (Bankr. C.D. Cal. Apr. 2, 2015) (collateral is adequately protected if the creditor's risk exposure is not increased); *In re Orlando Trout Creek Ranch*, 80 B.R. 190, 192 (Bankr. N.D. Cal. 1987); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713 (Bankr. D. Del. 1996); *see also, In re Constable Plaza Associates, L.P.*, 125 B.R. 98 (Bankr. S.D.N.Y. 1991) (secured creditor adequately protected where cash collateral used to preserve value of assets).

If the Debtor is not allowed to use the Lender's cash collateral, the Debtor will be forced to cease operations and engage in a liquidation of the Lender's collateral. The Debtor believes that, if the Company is required to implement this type of fire sale, the Lender's collateral may yield a total liquidation value of only $10 million. By contrast, as set forth herein above, the Debtor believes that its' going-concern value is approximately $25 million.

Moreover, the continued operation of the Debtor's business pursuant to the Budget through February 4, 2017 will result in an increase in the Debtor's cash of approximately $3.5 million from the Petition Date through February 4, 2016 with a less than $2 million diminution in inventory over the same period. Moreover, during an interim 4-week period, cash is projected to increase $3.1 million with only a $1.3 million decrease in inventory. These net increases, with no significant expense accruals, reflect the profitability of the Debtor's continued operations during these periods. Based on either a comparison of liquidation value to going-concern value, or a simple comparison of cash and inventory assets during the period, it is clear that the Lender's position is improved by the use of its cash collateral to preserve assets and going-concern operations.

### C. The Debtor Will Adequately Protect The Lender With Replacement Liens.

As another form of adequate protection (not that anything further is required), the Debtor offers to grant the Lender replacement liens, to the extent of diminution in value of its interests, on all post-petition property of the same type and character as the property to which the Lender's valid, perfected and unavoidable prepetition liens, if any, extended. The grant of replacement liens more than adequately protects the Lender's security interest in the collateral. In addition, the Debtor will provide the Lender with copies of all publicly available pleadings, papers and reports filed with the Bankruptcy Court or submitted to the United States Trustee or any other non-privileged information reasonably requested by the Lender.

## IV.

## THE COURT SHOULD AUTHORIZE THE INTERIM USE OF CASH COLLATERAL PENDING A FINAL HEARING

Pursuant to FRBP 4001(b)(2), the Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion, and may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See generally, In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (discussion of importance of emergency relief granting use of cash collateral at the commencement of a case).

The Debtor will suffer immediate and irreparable harm unless it is permitted to pay its essential expenses prior to a final hearing on the cash collateral motion. Most significantly, the Debtor must pay employees, trade vendors, and utilities within the first several weeks of commencing the case. If the Debtor is not permitted to pay these critical expenses, the estate will be severely damaged. According to the Budget, the Debtor projects operating disbursements of approximately $3.1 million through December 10, 2016, with a permitted variance of up to 20% for any particular line item and 15% in the aggregate due to timing, differences and fluctuation in prices and rates. This is the amount of cash collateral the Debtor seeks authority to use pending the final hearing on the Motion within that time. Closing down the Debtor's operations, even for a brief time, will immediately cause loss of sales and cancellations of orders and may force



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

customer traffic to other available retailers.

Under the circumstances, the Debtor requests that the Court set a final hearing as soon as the Court's calendar permits and authorize the Debtor to use cash collateral in accordance with the Budget on an interim basis pending the final hearing.

**V.**

**CONCLUSION**

**WHEREFORE**, the Debtor requests that the Bankruptcy Court enter an Order, substantially in the form attached as Exhibit B:

A. Approving the Debtor to use cash collateral of the Lender as of the Petition Date in accordance with the Budget on an interim basis pending the final hearing on the Motion and, if the Motion is granted on a final basis, for approximately three months after the final hearing on the Motion;

B. Authorizing the Debtor to provide the Lender with further adequate protection than it already enjoys, to the extent of any diminution of the Lender's collateral, by granting the Lender replacement security interests and liens on any postpetition property of the estate that have the same scope, priority, validity and enforceability as the Lender's prepetition security interests and liens had with respect to the cash collateral that is used by the Debtor but without requiring any additional filing or recordation of statements or documents.

C. Setting a final hearing on the Motion in accordance with Rule 4001 as soon as reasonably convenient for the Bankruptcy Court; and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

D. Granting such other and further relief as may be appropriate under the circumstances.

Dated: November 9, 2016

ROBINS KAPLAN LLP

By: /s/ Scott F. Gautier
Scott F. Gautier
Lorie A. Ball
Kevin D. Meek

Proposed Attorneys For Debtor and Debtor In Possession

# EXHIBIT A

## Cash Collateral Budget

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Nasty Gal, Inc. - Cash Forecast**

**Weekly Cash Forecast**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Week #** | Stub Week | Forecast | Forecast | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| ***($ in 000s)*** **Week ending** | 12-Nov-16 | 19-Nov-16 | 26-Nov-16 | 3-Dec-16 | 10-Dec-16 | 17-Dec-16 | 24-Dec-16 | 31-Dec-16 | 7-Jan-17 | 14-Jan-17 | 21-Jan-17 | 28-Jan-17 | 4-Feb-17 | Total |
| **Operating Cash Receipts** | | | | | | | | | | | | | | |
| Wholesale Receipts | - | - | 250 | - | - | - | - | - | - | - | - | 500 | - | 750 |
| Retail / eCommerce | 793 | 1,387 | 2,058 | 2,183 | 1,658 | 1,658 | 1,658 | 1,133 | 1,089 | 1,089 | 1,089 | 1,089 | 1,311 | 18,195 |
| Credit Card Fees & Chargebacks | (22) | (38) | (56) | (57) | (44) | (44) | (44) | (30) | (29) | (29) | (29) | (29) | (35) | (485) |
| **Total Operating Receipts** | 771 | 1,349 | 2,252 | 2,125 | 1,614 | 1,614 | 1,614 | 1,103 | 1,060 | 1,060 | 1,060 | 1,560 | 1,276 | 18,459 |
| **Operating Cash Disbursements** | | | | | | | | | | | | | | |
| Merchandise | - | 413 | 415 | 442 | 543 | 430 | 294 | 318 | 557 | 639 | 519 | 511 | 566 | 5,646 |
| Critical Vendor Payments | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Freight / Customs | - | - | 500 | - | - | - | 500 | - | - | - | 500 | - | - | 1,500 |
| Payroll, including Employee Benefits, Taxes | - | - | 512 | 23 | 439 | 26 | 439 | 87 | 462 | 8 | 439 | 69 | 439 | 2,943 |
| Chief Restructuring Officer | - | - | 25 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 150 |
| Independent Contractor (a) | - | 26 | 15 | 36 | 101 | 25 | 5 | 11 | 36 | 82 | 24 | 11 | 36 | 408 |
| Net Rent | - | - | - | - | 515 | - | - | - | - | 410 | - | - | - | 925 |
| Utilities | - | - | 10 | - | - | - | - | 30 | - | - | - | 30 | - | 70 |
| Taxes (Sales, RE, etc) | - | - | 135 | 25 | - | - | 110 | 25 | 25 | - | - | 277 | 25 | 623 |
| Insurance | - | - | - | 37 | - | - | - | - | - | - | - | - | - | 37 |
| Digital Marketing | - | - | - | 653 | - | - | - | - | 544 | - | - | - | 605 | 1,802 |
| Other / Misc | - | 15 | - | 85 | 15 | - | 15 | - | 85 | - | 15 | - | 85 | 315 |
| **Total Operating Disbursements** | - | 454 | 1,612 | 1,313 | 1,625 | 494 | 1,376 | 483 | 1,721 | 1,151 | 1,510 | 911 | 1,769 | 14,419 |
| **Operating Cash Flow** | 771 | 895 | 640 | 812 | (11) | 1,121 | 238 | 620 | (661) | (91) | (450) | 649 | (493) | 4,041 |
| **Bankruptcy Expenditures** | | | | | | | | | | | | | | |
| Professional Fees | 15 | - | - | 55 | - | 200 | - | - | 5 | - | 200 | - | 5 | 480 |
| **Total Bankruptcy Disbursements** | 15 | - | - | 55 | - | 200 | - | - | 5 | - | 200 | - | 5 | 480 |
| **Net Cash Flow** | 756 | 895 | 640 | 757 | (11) | 921 | 238 | 620 | (666) | (91) | (650) | 649 | (498) | 3,561 |
| Beginning Book Cash | 1,182 | 1,938 | 2,833 | 3,473 | 4,230 | 4,219 | 5,140 | 5,378 | 5,998 | 5,332 | 5,241 | 4,592 | 5,241 | 1,182 |
| Net Cash Flow | 756 | 895 | 640 | 757 | (11) | 921 | 238 | 620 | (666) | (91) | (650) | 649 | (498) | 3,561 |
| **Ending Book Cash Balance** | 1,938 | 2,833 | 3,473 | 4,230 | 4,219 | 5,140 | 5,378 | 5,998 | 5,332 | 5,241 | 4,592 | 5,241 | 4,743 | 4,743 |

*(a) Includes employees paid as independent contractors that perform the following functions: IT services, engineering contracting, technology services, marketing, and financial planning and analysis*

| **Memo: Bankruptcy / Professional Fees Disbursed** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Robins, Kaplan | - | - | - | - | - | 150 | - | - | - | - | 150 | - | - | 300 |
| UCC Legal & FA | - | - | - | 50 | - | 50 | - | - | - | - | 50 | - | - | 150 |
| Claims and Noticing Agent | 15 | - | - | 5 | - | - | - | - | 5 | - | - | - | 5 | 30 |
| **Total** | 15 | - | - | 55 | - | 200 | - | - | 5 | - | 200 | - | 5 | 480 |

**Nasty Gal, Inc. - Inventory Roll-Forward**

**Weekly inventory Forecast**

| ***($ in 000s)*** | **Week #** | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Forecast | Forecast | Forecast | Actual | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| | **Week ending** | 12-Nov-16 | 19-Nov-16 | 26-Nov-16 | 3-Dec-16 | 10-Dec-16 | 17-Dec-16 | 24-Dec-16 | 31-Dec-16 | 7-Jan-17 | 14-Jan-17 | 21-Jan-17 | 28-Jan-17 | 4-Feb-17 | Total |
| **Beginning Inventory Balance** | | **9,712** | **9,704** | **9,538** | **9,057** | **8,566** | **8,418** | **8,157** | **7,760** | **7,628** | **7,697** | **7,848** | **7,879** | **7,903** | **9,712** |
| Additions to Inventory | | 571 | 413 | 415 | 442 | 543 | 430 | 294 | 318 | 557 | 639 | 519 | 511 | 566 | 6,217 |
| Reduction of Inventory | | (579) | (579) | (895) | (933) | (691) | (691) | (691) | (449) | (488) | (488) | (488) | (488) | (574) | (8,034) |
| **Ending Inventory Balance** | | **9,704** | **9,538** | **9,057** | **8,566** | **8,418** | **8,157** | **7,760** | **7,628** | **7,697** | **7,848** | **7,879** | **7,903** | **7,895** | **7,895** |

**EXHIBIT B**

**Proposed Order**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Scott F. Gautier (State Bar No. 211742)
*SGautier@RobinsKaplan.com*
Lorie A. Ball
*LBall@RobinsKaplan.com*
Kevin D. Meek
*KMeek@RobinsKaplan.com*
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

*Proposed Attorneys for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

In re:

NASTY GAL INC., a California corporation,

Debtor and Debtor in Possession.

Case No. 2:16-bk-24682

Chapter 11

**ORDER AUTHORIZING AND APPROVING (A) USE OF CASH COLLATERAL AND (B) GRANT OF ADEQUATE PROTECTION TO SECURED CREDITOR**

**Hearing:**

Date: November 14, 2016
Time: 10: 00 a.m.
Place: Courtroom 1539
255 East Temple Street
Los Angeles, CA 90012

Upon the motion of Nasty Gal, Inc., as debtor and debtor in possession (the "**Debtor**"), on an emergency basis for entry of an Interim Order (1) authorizing the Debtor to use the cash collateral of Hercules Technology Growth Capital, Inc., a Maryland Corporation (the "**Lender**"), and (2) authorizing adequate protection, and (3) setting a final hearing on the motion (the "**Motion**")[1]; and the Court having subject matter jurisdiction to consider the Motion and the relief

[1] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

requested therein pursuant to 28 U.S.C. §1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§1408 and 1409; and notice of the hearing being adequate and sufficient under the circumstances; and the relief requested in the Motion being in the best interest of the Debtor and its estate and creditors; and the Court having reviewed the Motion, the record and docket in this case, and having heard the arguments and statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and finding that the Debtor will suffer immediate and irreparable harm if relief is not granted, and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED THAT:**

**A.** The Motion is granted as set forth herein.

**B.** Pursuant to section 363 of the Bankruptcy Code and subject to the terms of this Order, the Debtor is authorized to use cash collateral of the Lender on an interim basis pending a final hearing on the Motion in accordance with the budget attached to the Motion as Exhibit A (the "Budget"); provided, however, that the Debtor shall be deemed to be in compliance with the Budget as long as, for any particular operating month, (1) the aggregate expenditures for all categories set forth in the Budget do not exceed the budgeted aggregate expenses by more than 15% and (2) the expenditures with respect to any particular category of expense set forth in the Budget do not exceed the amount set forth in the Budget for such category by more than 20%.

**C.** To the extent that the Debtor's use, on and after the Petition Date, of the cash collateral of the Lender results in a diminution in the value of such cash collateral, the Lender shall have a replacement first priority lien on and security interest in postpetition property of the same type and character as the property to which the Lender's liens extend, to secure the prepetition claim of the Lender against the Debtor. The replacement liens and security interests granted pursuant to this Order shall have the same validity, priority, enforceability and avoidability as the prepetition liens that the Lender had on the cash collateral and other property

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

that allegedly serves as the Lender's collateral. The granting of such replacement liens and security interests is without prejudice to the rights, if any, of the Debtor or any other party in interest to (1) object to or seek to avoid, at any time, the prepetition claims, liens and security interests, if any, of the Lender, (2) seek to subordinate the replacement liens and security interests to any other liens, interests or claims that the Bankruptcy Court may authorize under any section of the Bankruptcy Code, or (3) seek to modify or expunge the replacement liens and security interests.

**D.** The Debtor shall provide the Lender with copies of all pleadings, papers and reports filed with the Bankruptcy Court or submitted to the United States Trustee and any other non-privileged information reasonably requested by the Lender.

**E.** A final hearing on the Motion shall be held on _____________, 2016 at __________.m. Pacific Time before this Court (the "Final Hearing").

**F.** Any response to the Motion shall be filed with the Court and delivered to counsel for the Debtor, the United States Trustee, and the Lender no later than ____ days prior to the Final Hearing.

**G.** Any reply to any response to the Motion shall be filed with the Court and delivered to the party that filed the response, the attorneys for the Debtor, the United States Trustee and the Lender no later than ___ days prior to the Final Hearing.

**H.** This Order shall be effective immediately upon entry.

###

**EXHIBIT C**

**Debtor's Statement Regarding Cash Collateral Or Debtor In Possession Financing**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Scott F. Gautier (State Bar No. 211742)<br>SGautier@robinskaplan.com<br>ROBINS KAPLAN LLP<br>2049 Century Park East, Suite 3400<br>Los Angeles, CA 90067<br>Ph: 310 552-0130<br>Fax: 310 229-5800<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>NASTY GAL INC.<br><br>Debtor(s). | CASE NO.: 2:16-bk-24862-BB<br>CHAPTER: 11 |
|---|---|
| | **STATEMENT REGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** |
| | DATE: 11/14/2016<br>TIME: 10:00 a.m.<br>COURTROOM: 1539<br>ADDRESS: 255 East Temple Street<br>Los Angeles, CA 90012 |

Secured party(ies): Hercules Technology Growth Capital, Inc.

The Debtor has requested the approval of either (1) a motion for use of cash collateral, or postpetition financing, or both, or (2) through a separately-filed motion, a stipulation providing for the use of cash collateral, or postpetition financing, or both. The proposed form of order on the motion or the stipulation contains the following provisions or findings of fact:

| Disclosures Tracking FRBP 4001(c)(1)(B)(i) through (xi) and (d)(1)(B) | Page No.: | Line No. (if applicable) |
|---|---|---|
| ☐ (i): “[A] grant of priority or a lien on property of the estate under § 364(c) or (d)” | | |
| ☐ (ii): “[T]he providing of adequate protection or priority for a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under § 364 to make cash payments on account of the claim”<br>☐ Cross-collateralization, *i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured party would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law<br>☐ Roll-up, *i.e.*, provisions deeming prepetition debt to be postpetition debt or using postpetition loans from a prepetition secured party to pay part or all of that secured party’s prepetition debt, other than as provided in § 552(b) | | |

| | | | |
|---|---|---|---|
| *Continued from page 1* ☐ Grant a replacement lien in an amount in excess of the dollar amount of the lien on cash collateral as of the petition date | | | |
| ☐ | (iii): "[A] determination of the validity, enforceability, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing the claim" | | |
| ☐ | (iv): "[A] waiver or modification of Code provisions or applicable rules relating to the automatic stay" ☐ Automatic relief from the automatic stay upon occurrence of certain events. | | |
| ☐ | (v): "[A] waiver or modification of any entity's authority or right to file a plan, seek an extension of time in which the debtor has the exclusive right to file a plan, request the use of cash collateral under § 363(c), or request authority to obtain credit under § 364" | | |
| ☐ | (vi): "[T]he establishment of deadlines for filing a plan of reorganization, for approval of a disclosure statement, for a hearing on confirmation, or for entry of a confirmation order" | | |
| ☒ | (vii): "[A] waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien" | 9 | 18 |
| ☐ | (viii): "[A] release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action" | | |
| ☐ | (ix): "[T]he indemnification of any entity" | | |
| ☐ | (x): "[A] release, waiver, or limitation of any right under § 506(c)" ☐ The granting of any lien on any claim or cause of action arising under § 506(c) | | |
| ☐ | (xi): "The granting of any lien on any claim or cause of action arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a), or 724(a)" | | |
| | **Additional Disclosures Required by LBR 4001-2** | **Page No.:** | **Line No. (if applicable)** |
| ☐ | With respect to a professional fee carve out, disparate treatment for professionals retained by a creditors' committee from that provided for the professionals retained by the debtor | | |
| ☐ | Pay down prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

11/09/2016 Scott F. Gautier /s/ Scott F. Gautier
*Date* *Printed Name* *Signature*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **STATEMENTREGARDING CASH COLLATERAL OR DEBTOR IN POSSESSION FINANCING [FRBP 4001; LBR 4001-2]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___________, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) ___________, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| ___________ | ___________________________ | ___________________________ |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |