**EXHIBIT A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61273483.1

1

Scott F. Gautier (State Bar No. 211742)
*SGautier@RobinsKaplan.com*
Lorie A. Ball (State Bar No. 210703)
*LBall@RobinsKaplan.com*
Kevin D. Meek (State Bar No. 280562)
*KMeek@RobinsKaplan.com*
ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
Telephone:    310 552 0130
Facsimile:    310 229 5800

*Attorneys for Debtor and Debtor in Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>NASTY GAL INC., a California corporation,<br><br>    Debtor and Debtor in Possession. | Case No.  2:16-bk-24862-BB<br><br>Chapter  11<br><br>**ORDER (A) APPROVING STALKING HORSE ASSET PURCHASE AGREEMENT (B) APPROVING BID PROTECTIONS; (C) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS; (D) SCHEDULING THE RELATED AUCTION AND HEARING TO CONSIDER APPROVAL OF SALE; (E) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (F) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (G) GRANTING RELATED RELIEF**<br><br>**Hearing:**<br><br>Date:    January 5, 2017<br>Time:    10:00 a.m.<br>Place:    Courtroom 1539<br>          255 East Temple Street<br>          Los Angeles, CA  90012 |

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

This matter coming before the Court on the motion (the "**Motion**")[1] of the above-captioned debtor and debtor in possession (the "**Debtor**") for the entry of an order pursuant to sections 105, 362, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (the "**Local Rules**"): (I)(A) approving "stalking horse" asset purchase agreement for the sale of substantially all of the Debtor's intellectual property and customer database assets; (B) approving the Bid Protections; (C) approving procedures in connection with the auction and sale of the Debtor's assets; (D) scheduling the related auction and hearing to consider approval of sale; (E) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases; (F) approving the form and manner of notice thereof; and (G) granting related relief; and (II)(A) authorizing the sale of the Debtor's assets pursuant to the successful bidder's asset purchase agreement free and clear of liens, claims, encumbrances, and other interests; (B) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and (C) granting related relief; the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient cause having been shown;

**IT IS FURTHER FOUND AND DETERMINED THAT:**

A.      The Debtor's proposed notice of the Bidding Procedures, the Assumption and Assignment Notice, and the notice of the Auction and the hearing to approve the sale of the Purchased Assets (the "**Sale Hearing**") are appropriate and reasonably calculated to provide all

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

interested parties with timely and proper notice, and no other or further notice is required.

B.      The Bidding Procedures substantially in the form attached hereto as **Schedule 1** are fair, reasonable, and appropriate and are designed to maximize the recovery from the Sale of the Purchased Assets.

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 90144.

D.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived or settled are overruled.

3.      The Bidding Procedures attached hereto as **Schedule 1** are APPROVED.

4.      Boohoo F I Limited is hereby approved to be and designated as the Stalking Horse Bidder.

5.      Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtor's entry into the APA with the Stalking Horse Bidder (including any amendments thereto) attached as Exhibit B to the Motion (the "**Stalking Horse Agreement**"), is hereby approved.

6.      The Breakup Fee and Expense Reimbursement are APPROVED and shall be paid when and as set forth in the Stalking Horse Agreement as an administrative claim of the estate under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall have priority and not be subordinated to any other administrative expense claims against the Debtor. Any Breakup Fee or Expense Reimbursement payable pursuant to the terms of the Stalking Horse Agreement shall be payable without any further order of the Bankruptcy Court. Upon the consummation of any Alternative Transaction (as defined in the Stalking Horse Agreement), the Breakup Fee and

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Expense Reimbursement shall be paid, if due, to the Stalking Horse Bidder from the proceeds of such Alternative Transaction before payment of such proceeds to any other person or entity, including any lender holding a lien on the assets sold in such Alternative Transaction, and no lien shall attach to the portion of the proceeds of such Alternative Transaction representing the amount of Breakup Fee and Expense Reimbursement.

7.      The deadline for Potential Bidders to submit Qualified Bids in accordance with the Bidding Procedures shall be February 2, 2017 at 1:00 p.m. (Pacific Standard Time) (the "**Bid Deadline**").

8.      The Debtor shall determine whether a bid is a Qualified Bid, provided that the Debtor shall not determine that any bid is a Qualified Bid if such bid does not comply with the Bidding Procedures.  Any secured lender must comply with the Bidding Procedures in all respects to be a Qualified Bidder.  The Debtor shall notify Qualified Bidders whether their bids have been recognized as such as promptly as practicable after a Qualified Bidder delivers all of the materials required by the Bidding Procedures, and in no event later than February 5, 2017. Notwithstanding any other provisions of this Order or the Bidding Procedures, the Stalking Horse Agreement is a Qualified Bid, and the Stalking Horse Bidder is a Qualified Bidder, for all purposes under this Order and the Bidding Procedures.

9.      The Auction, if necessary, shall be held on February 7, 2017 at 10:00 a.m. (Pacific Standard Time) at the offices of Debtor's counsel, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067, or such later time or such other place as the Debtor, with the consent of the Stalking Horse Bidder, shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.  If no Qualified Bids are received by the Bid Deadline, there shall be no Auction, and the Stalking Horse Bidder shall be declared the Successful Bidder.

10.      At the Auction, each Qualified Bidder shall be required to confirm, in writing, and on the record that it has not engaged in any collusion with respect to the bidding or the sale and that its Qualified Bid is a good faith bona fide offer that it shall consummate if selected as the Successful Bidder.

11.    The Auction shall be transcribed.

12.    The Debtor shall determine which offer is the highest and otherwise best offer for the Purchased Assets, provided that the Debtor shall give a cash credit to the Stalking Horse Bidder for the amount of the Breakup Fee and Expense Reimbursement.

13.    Neither the Stalking Horse Bidder nor the Successful Bidder (if different) shall be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse Agreement (or, in the case of a Successful Bidder other than the Stalking Horse Purchaser, the applicable asset purchase agreement) or any other Sale related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence.

14.    The Sale Hearing shall be held on February 8, 2017 at ____:00 __.m. (Pacific Standard Time) before this Court, the U.S. Bankruptcy Court for the Central District of California, 255 East Temple Street, Los Angeles, CA  90012, Courtroom 1539.  Any objections to the Sale shall be filed and served so as to be received no later than January 30, 2017 at 4:00 p.m. (Pacific Standard Time) by: (i) Nasty Gal, Inc., 539 W. 6th Street, Los Angeles, CA (Attn: Joe Scirocco (joe.scirocco@shopnastygal.com)); (ii) counsel to the Debtor: Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 (Attn: Scott F. Gautier (SGautier@RobinsKaplan.com)), (iii) counsel to the Stalking Horse Bidder: Troutman Sanders LLP, 600 Peachtree Street, Suite 5200, Atlanta, GA 30308 (Attn: Harris B. Winsberg (harris.winsberg@troutmansanders.com) and Stephen S. Roach (stephen.roach@troutmansanders.com), (iv) counsel to the Official Committee of Unsecured Creditors: Levene, Neale, Bender, Yoo & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067 (Attn. Gary Klausner (gek@lnbyb.com)) and (v) counsel to the Office of the United States Trustee: Office of the United States Trustee, 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017 (Attn: Ron Maroko) (collectively, the "**Notice Parties**").

15.    The Sale Hearing may be adjourned by the Debtor, with consent from the Stalking

Horse Bidder, from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.

16.	The following forms of notice are approved: (a) the Auction and Hearing Notice, in the form substantially similar to that attached hereto as **Schedule 3** (the "**Auction and Hearing Notice**") and (b) the Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtor That May Be Assumed and Assigned (the "**Assumption and Asignment Notice**"), in the form substantially similar to that attached hereto as **Schedule 4**.

17.	The Debtor shall, within one (1) business day after the entry of this Order, serve this Order, the Bidding Procedures, and the Auction and Hearing Notice by first class mail, postage prepaid on (a) the US Trustee, (b) any Official Committee of Unsecured Creditors, (c) any parties requesting notices in this case pursuant to Bankruptcy Rule 2002, (d) counsel to the Stalking Horse Bidder, (e) Hercules Technology Growth Capital, Inc., as agent for the prepetition lender; and (f) all Potential Bidders.

18.	The Debtor shall, within one (1) business day after the entry of this Order, serve the Auction and Hearing Notice by first class U.S. or international mail, postage prepaid, upon (a) all entities known to the Debtor to have asserted any liens or other interests in any Purchased Assets; (b) all federal, state, and local regulatory, taxing and other authorities which have a reasonably known interest in the relief requested by the Motion, including the United States Attorney's office, all state attorneys general in states in which the Debtor does business, and the Internal Revenue Service; and (c) all of the Debtor's known creditors and all other known vendors, suppliers, lenders, contract/license/lease counterparties.

19.	The Debtor shall serve the Motion and the Assumption and Assignment Notice upon each counterparty to an Assumed and Assigned Contract or their counsel (if known) no later than one business day after the entry of this Order.  The Assumption and Assignment Notice shall state the date, time and place of the Sale Hearing as well as the date by which any objection to the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

7

assumption and assignment of the Assumed and Assigned Contracts must be filed and served.

The Assumption and Assignment Notice also will identify the amounts, if any, that the Debtor

believes are owed to each counterparty to an Assumed and Assigned Contract in order to cure any

defaults that exist under such contract (the "**Cure Amounts**").

20.    If any counterparty to an Assumed and Assigned Contract objects for any reason to

the assumption and assignment of an Assumed and Assigned Contract (an "**Assumption**

**Objection**"), such counterparty must file and serve such Assumption Objection so as to be received

by the Notice Parties by no later than (the "**Assumption Objection Deadline**"): (i) **4:00 p.m. (Pacific**

**Standard Time) on January 30, 2017**, provided, however, if any bidder other than the Stalking

Horse Bidder is the Successful Bidder, then any counterparty may file and serve an objection to the

assumption and assignment of the Assumed and Assigned Contract solely with respect to the

Successful Bidder's ability to provide adequate assurance of future performance under the Assumed

and Assigned Contract up to the time of the Sale Hearing, or raise it at the Sale Hearing; or (ii) the

date otherwise specified in the Assumption and Assignment Notice (or, alternatively, the date set forth

in the motion to assume such Assumed and Assigned Contract if such contract is to be assumed and

assigned after the Sale Hearing).  The Court will make any and all determinations concerning

adequate assurance of future performance under the Assumed and Assigned Contracts pursuant to

sections 365(b) and (f)(2) of the Bankruptcy Code at the Sale Hearing.

21.    If a Contract or Lease is assumed and assigned pursuant to Court order, then,

except for Disputed Cure Amounts (as defined herein) or if the counterparty agrees otherwise, the

Assumed and Assigned Contract counterparty shall receive no later than three (3) business days

following the closing of the Sale, the Cure Amount, if any, as set forth in the Assumption and

Assignment Notice.  To the extent an Assumed and Assigned Contract counterparty wishes to

object to the Cure Amount, if any, set forth in the Assumption and Assignment Notice, its

Assumption Objection must set forth with specificity each and every asserted default in any

executory contract or unexpired lease and the monetary cure amount asserted by such

counterparty to the extent it differs from the amount, if any, specified by the Debtor in the

Assumption and Assignment Notice.

22.     In the event that the Debtor and the non-Debtor party cannot resolve any Cure Amount prior to closing of the Sale, the Debtor shall segregate any disputed Cure Amounts ("**Disputed Cure Amounts**") pending the resolution of any such disputes by the Court or mutual agreement of the parties.  Assumption Objections may be resolved by the Court at the Sale Hearing, or at a separate hearing either before or after the Sale Hearing.  Any counterparty to an Assumed and Assigned Contract that fails to timely file and serve an objection to the Cure Amounts shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of that set forth in the Assumption and Assignment Notice.

23.     Nothing in this Order or the service of the Assumption and Assignment Notice on any counterparty to an Assumed and Assigned Contract shall require the Debtor to assume or assign any contract or unexpired lease included in the Assumption and Assignment Notice, and nothing in this Order shall impair the right of the Stalking Horse Bidder or other Successful Bidder to remove any contract or unexpired lease from the list of Assumed and Assigned Contracts at any time prior to the closing of the Sale in accordance with the terms of the Stalking Horse Agreement or other applicable purchase agreement.

24.     Except to the extent otherwise provided in the Successful Bidder's Purchase Agreement, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after the assumption and assignment of the Assumed and Assigned Contracts pursuant to section 365(k) of the Bankruptcy Code.

25.     To the extent the provisions of this Order are inconsistent with the provisions of any Exhibit or Schedule referenced herein or with the Motion, the provisions of this Order shall control.

26.     The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

27.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 6006, 7062, 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable.

Dated:          February _____, 2017

_____
United States Bankruptcy Judge

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

## <u>Schedule  1</u>

**(Bidding Procedures)**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed in connection with the sale of all or substantially all of the intellectual property and customer database assets (the "**Assets**") of the Debtor, in connection with the chapter 11 case pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), case number 16-24862-BB (the "**Bankruptcy Case**").

The Debtor entered into that certain asset purchase agreement, dated December ___, 2016 (together with the schedules and related documents thereto, the "**Stalking Horse Agreement**") between the Debtor and Boohoo F I Limited (the "**Stalking Horse Purchaser**"), pursuant to which the Stalking Horse Purchaser has agreed to acquire all or substantially all of the Assets (collectively, to the extent provided in the Stalking Horse Agreement, the "**Purchased Assets**") on the terms and conditions specified therein.

The sale transaction pursuant to the Stalking Horse Agreement is subject to competitive bidding as set forth herein. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Stalking Horse Agreement.  These Bidding Procedures may not be modified at or prior to the Auction without the express written consent of the Stalking Horse Purchaser.

### I      ASSETS TO BE SOLD

The Debtor seeks to complete a sale of the Purchased Assets (the "**Sale**") described in Section 1.1 of the Stalking Horse Agreement.  The Stalking Horse Agreement will serve as the "stalking-horse" bid for the Purchased Assets.  Except as otherwise provided in the Stalking Horse Agreement or such other approved purchase agreement of the Successful Bidder, all of the Seller's right, title and interest in and to each Purchased Asset to be acquired shall be sold free and clear of all Encumbrances and Liabilities (as defined in the Stalking Horse Agreement), such Encumbrances and Liabilities to attach solely to the net proceeds of the Sale of such Purchased Assets.

### II      THE BID PROCEDURES

In order to ensure that the Debtor receives the maximum value for the Purchased Assets, it intends to conduct a sale process for the Purchased Assets pursuant to the procedures and on the timeline proposed herein.

### A.    Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the bidding process, prior to the Bid Deadline (defined below), each person or entity, other than the Stalking Horse Purchaser, who wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

    (i)    a written disclosure of the identity of each person or entity including all affiliates, equity sources or other parties that will be or is associated with bidding for the Purchased Assets or otherwise participating in connection with such bid and the complete terms of any such participation; and

    (ii)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Debtor to a Potential Bidder in form and substance satisfactory to the Debtor, which shall inure to the benefit of any purchaser of the Purchased Assets; without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions.

A Potential Bidder that delivers the documents and information described above and that the Debtor determines in its reasonable business judgment, after consultation with its advisors, is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**."  The Debtor will limit access to due diligence to those parties it believes, in the exercise of its reasonable judgment, are pursuing the transaction in good faith.

As promptly as practicable after a Potential Bidder delivers all of the materials required above (and in any event no later than two (2) business days thereafter), the Debtor will determine and will notify the Potential Bidder and the Notice Parties if such Potential Bidder is a Qualified

Bidder.

**B.**    **Due Diligence**

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor, in consultation with its advisors, deems appropriate, in its reasonable discretion. The Debtor will provide, in an electronic data room to be established for these purposes, the APA, and will grant each Qualified Bidder access to such data room.  The Debtor may designate a representative or representatives to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.  Each Qualified Bidder shall be required to acknowledge that it has had an opportunity to conduct any and all due diligence regarding the Purchased Assets in conjunction with submitting its Bid (as defined below), and no Bid shall be subject to or conditioned upon any further due diligence

The Debtor must promptly advise the Stalking Horse Purchaser in the event any other Qualified Bidder receives diligence the Stalking Horse Purchaser has not previously received and shall promptly be provided with access to such diligence materials.

The due diligence period shall end on the Bid Deadline.  For the avoidance of doubt, neither the Debtor nor any of its respective representatives shall be obligated to furnish any due diligence information to any person other than a Qualified Bidder.

**C.**    **Provisions Governing Qualified Bids**

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**"):

(i)    it fully discloses the identity of the Qualified Bidder;

(ii)    it includes a letter or detailed email stating with specificity the assets to be acquired (including the specific executory contracts and unexpired leases) such Qualified Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Qualified Bidder in the sale;

(iii)    it includes a duly executed definitive asset purchase agreement having

substantially identical terms and conditions as the APA, provided that any such agreement shall provide for higher and better consideration and shall not provide for the payment of any break-up fee, expense reimbursement, topping fee, or other similar arrangement (the "**Purchase Agreement**");

(iv)     it includes a redline of the Purchase Agreement marked to reflect any proposed amendments and modifications to the Stalking Horse Agreement and the applicable schedules and exhibits;

(v)     it states in writing that it is not subject to any diligence, financing, internal approvals, or any other contingencies of any nature except the entry of a bankruptcy court Order providing for findings that the transaction shall be free and clear of liens pursuant to 11 USC § 363(f) and the bidder is a good faith party under 11 USC § 363(m);

(vi)     it agrees in writing that the Qualified Bidder's offer is binding and irrevocable until (i) the Closing Date (as defined below) if the Qualified Bidder is selected as the Successful Bidder or the Back-up Bidder (as both terms are defined below), or (ii) ten (10) days after the Sale Hearing (as defined below) if the Qualified Bidder is not selected as the Successful Bidder or the Back-up Bidder;

(vii)     it provides for a closing date that is no later than February 28, 2017 ("**Closing Date**");

(viii)     it agrees in writing that the Qualified Bidder agrees to serve as the Back-up Bidder if the Qualified Bidder's bid at the Auction is selected as the Back-up Bid (as defined below);

(ix)     it provides for a purchase price with a minimum cash portion of not less than $21,150,000, and in the event that the bid includes assets in addition to the Purchased Assets, indicates how much of the bid is allocated to the Purchased Assets;

(x)     it is accompanied by adequate assurance of the ability to close and future performance information (the "**Adequate Assurance Information**"), including (i) information about the Qualified Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Qualified Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission and closing of its bid, (iv) the identity and exact name of the Qualified Bidder (including any equity holder or other financial backer if the Qualified Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Qualified Bidder as the Debtor may require.  By submitting a bid, each Qualified Bidder agrees that the Debtor may disseminate their Adequate Assurance Information to affected landlords, contract counterparties, and other interested parties in the event that the Debtor determines such bid to be a Qualified Bid; and

(xi)    contain or be accompanied by (a) a deposit in the form of a certified check or wire transfer, payable to the order of the Debtor, in the amount of fifteen percent (15%) of the minimum cash portion of consideration required by clause (ix) above, which funds will be deposited into an interest bearing escrow account to be identified and established by the Debtor (a "**Good Faith Deposit**") and (b) written evidence, documented to the Debtor's satisfaction, that demonstrates the Qualified Bidder has available cash, a commitment for financing if selected as the Successful Bidder (as defined below) sufficient to pay the full consideration in the bid (provided,

however, that the closing shall not be contingent in any way on the Successful Bidder's financing) and such other evidence of ability to consummate the transaction(s) as the Debtor may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals. The Debtor reserves the right to increase the Good Faith Deposit for one or more Qualified Bidders (as defined below) in its sole discretion.

(xii)   it offers to purchase the Purchased Assets upon terms and conditions that the Debtor reasonably determines are at least as favorable to the Debtor as those set forth in the Stalking Horse Agreement;

(xiii)   it identifies with particularity which executory contracts and unexpired leases the Qualified Bidder wishes to assume and provides for the Qualified Bidder to pay related cure costs;

(xiv)   it includes an acknowledgement and representation that the bidder: (A) has had an opportunity to conduct any and all required due diligence regarding the Purchased Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (C) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Purchased Assets or the completeness of any information provided in connection therewith or with the Auction (defined below), except as expressly stated in the Purchase Agreement; and (D) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

(xv)   it includes evidence, in form and substance reasonably satisfactory to the

Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Purchase Agreement;

(xvi)   it states that the Qualified Bidder consents to the jurisdiction of the Bankruptcy Court;

(xvii)   it contains such other information reasonably requested by the Debtor; and

(xviii)  it is received prior to the Bid Deadline.

Notwithstanding the foregoing, the Stalking Horse Purchaser is deemed a Qualified Bidder and the Stalking Horse Agreement is deemed a Qualified Bid, for all purposes in connection with the Bidding Procedures, the Auction, and the Sale. The Stalking Horse Purchaser shall not be required to take any further action in order to participate in the Auction (if any) or, if the Stalking Horse Purchaser is the Successful Bidder, to be named the Successful Bidder at the Sale Hearing (as defined below).

The Debtor shall notify the Stalking Horse Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids (and with respect to each Qualified Bidder that submitted a bid as to whether such Qualified Bidder's bid constitutes a Qualified Bid) no later than one (1) business day following the expiration of the Bid Deadline.

The Debtor shall inform Qualified Bidders that their Bids have been designated as Qualified Bids no later than February 3, 2017.

### D.   Bid Deadline

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**"): (i) Nasty Gal, Inc., 539 W. 6th Street, Los Angeles, CA (Attn: Joe Scirocco (joe.scirocco@shopnastygal.com)); (ii) counsel to the Debtor: Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 (Attn: Scott F. Gautier (SGautier@RobinsKaplan.com)), (iii) counsel to the Stalking Horse Bidder: Troutman Sanders LLP, 600 Peachtree Street, Suite 5200, Atlanta, GA 30308 (Attn: Harris B. Winsberg (harris.winsberg@troutmansanders.com)  and  Stephen  S.  Roach  (stephen.roach@troutman

sanders.com), (iv) counsel to the Official Committee of Unsecured Creditors: Levene, Neale, Bender, Yoo & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067 (Attn. Gary Klausner (gek@lnbyb.com)) and (v) counsel to the Office of the United States Trustee: Office of the United States Trustee, 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017 (Attn: Ron Maroko)), so as to be received by the Notice Parties not later than 1:00 p.m. (Pacific Standard Time) on February 2, 2017 (the "**Bid Deadline**").

### E.    Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, (1) the amount of such bid, (2) the risks and timing associated with consummating such bid, (3) any proposed revisions to the Stalking Horse Agreement, and (4) any other factors deemed relevant by the Debtor in its reasonable discretion.

### F.    No Qualified Bids

If the Debtor does not receive any Qualified Bids other than the Stalking Horse Agreement, the Debtor will not hold an auction and the Stalking Horse Purchaser will be named the Successful Bidder for the Purchased Assets.

### G.    Auction Process

If the Debtor receives one or more Qualified Bids in addition to the Stalking Horse Agreement, the Debtor will conduct an auction of the Purchased Assets (the "**Auction**"), which shall be transcribed, at 10:00 a.m. (Pacific Standard Time) on **February 7, 2017** at the offices of the Debtor's counsel, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067, or such later time or such other place as the Debtor, with the consent of the Stalking Horse Purchaser, shall designate and notify to all Notice Parties and Qualified Bidders who have submitted Qualified Bids.  The Auction shall run in accordance with the following procedures:

(a)    Professionals and principals for the Debtor, the Stalking Horse Purchaser, and each Qualified Bidder shall be able to attend and observe the Auction, along with any other parties the Debtor deems appropriate;

(b)    only the Stalking Horse Purchaser and the Qualified Bidders who have

timely submitted a Qualified Bid will be entitled to make any subsequent bids at the Auction;

(c)    Each Qualified Bidder participating in the Auction will be required to confirm, in writing, and on the record at the Auction, that (a) it has not engaged in any collusion with respect to the Auction, and (b) its Qualified Bid is a good faith bona fide offer that it shall consummate if selected as the Successful Bidder;

(d)    at least one (1) business day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and the Back-up Bidder at the conclusion of the Auction.  At least one (1) business day prior to the Auction, the Debtor will identify to the Stalking Horse Purchaser and all other Qualified Bidders which Qualified Bid the Debtor believes in its reasonable discretion is the highest or otherwise best offer (the "**Starting Bid**");

(e)    all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

(f)    the Debtor, after consultation with its advisors and with the consent of the Stalking Horse Purchaser, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for

conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction; and

(g)     bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each a "**Subsequent Bid**") providing a net value to the estate of at least an additional $200,000 above the prior bid.  After the first round of bidding and between each subsequent round of bidding, the Debtor shall announce the bid that it believes to be the highest or otherwise better offer (the "**Leading Bid**"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.  Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtor will give a cash credit to the Stalking Horse Purchaser in the amount of the Breakup Fee and Expense Reimbursement (defined below).

(h)     The bidding at the Auction shall be transcribed or videotaped and the Debtor shall maintain a transcript of all bids made and announced at the Auction.

### H.     Selection of Successful Bid

Prior to the conclusion of the Auction, the Debtor, in consultation with its advisors, will review and evaluate each Qualified Bid in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer from among the Qualified Bidders submitted at the Auction (one or more such bids, collectively the "**Successful Bid**" and the bidder(s) making such bid, collectively, the "Successful Bidder**"), and communicate to the** Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bid.  The determination of the Successful Bid by the Debtor at the conclusion of the Auction shall be final,

subject only to approval by the Court.

Unless otherwise agreed to by the Debtor and the Successful Bidder, within one (1) business days after the conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.  Immediately following the conclusion of the Auction, the Debtor shall file a notice identifying the Successful Bidder with the Court and, if the Stalking Horse Purchaser is not the Successful Bidder, shall serve such notice by fax, email or overnight mail to all counterparties whose contracts are to be assumed and assigned.

The Debtor will sell the Purchased Assets to the Successful Bidder pursuant to the terms of the Successful Bid upon the approval of such Successful Bid by the Court at the Sale Hearing.

## I.     **Return of Deposits**

All deposits shall be returned to each bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder (as defined below) no later than five (5) business days following the conclusion of the Auction.

## J.     **Back-Up Bidder**

If an Auction is conducted, the Qualified Bidder with the next highest or otherwise best Qualified Bid to the Successful Bidder (the "**Back-up Bid**"), as determined by the Debtor in the exercise of its business judgment, at the Auction shall be required to serve as a back-up bidder (the "**Back-up  Bidder**") and keep such bid open and irrevocable until the Closing Date; provided that the Stalking Horse Purchaser shall not be required to be the Back-Up Bidder.   Following the Sale Hearing, if the Successful Bidder fails to consummate the approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder will be deemed to be the new Successful Bidder, and the Debtor will be authorized to consummate the sale with the Back-Up Bidder without further order of the Bankruptcy Court.

## K.     **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders shall be held in escrow, but shall not

become property of the Debtor's estate absent further order of the Bankruptcy Court.  The Debtor shall retain any Good Faith Deposit submitted by the Successful Bidder. At the closing of a Sale contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided. The Good Faith Deposits of the Back-up Bidder shall be retained until three (3) business days after the applicable Closing Date. The Good Faith Deposits of the other Qualified Bidders, including the Stalking Horse Purchaser if it elects not to serve as the Back-up Bidder, will be returned as soon as practicable but no later than five (5) Business Days following the conclusion of the Auction.  If the Successful Bidder (or, if the Sale is to be closed with the Back-up Bidder, then the Back-up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtor and its estate shall be entitled to retain the Good Faith Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-up Bidder, then the Back-up Bidder) as part of the damages resulting to the Debtor and its estate for such breach or failure to perform.  Notwithstanding any of the foregoing, the terms of the Stalking Horse Agreement shall control in all respects in relation to the Good-Faith Deposit of the Stalking Horse Purchaser, including any liquidated damages provisions contained in the Stalking Horse Agreement, provided that the Good-Faith Deposit of the Stalking Horse Purchaser shall be returned to the Stalking Horse Purchaser within five (5) business days following the conclusion of the Auction if the Stalking Horse Purchaser is not the Successful Bidder or elects not to serve as the Back-up Bidder.

**L.      The Bid Protections**

In recognition of its expenditure of time, energy, and resources, the Debtor has agreed that if the Stalking Horse Purchaser is not the Successful Bidder, the Debtor will pay the Stalking Horse Purchaser an amount in cash equal to (i) $700,000 as more fully described in the Stalking Horse Agreement (the "**Breakup Fee**") plus (ii) the aggregate amount of the actual and documented fees and expenses incurred by the Stalking Horse Purchaser and its affiliates (including fees and expenses for legal, accounting, and financial advisors) in connection with the

Stalking Horse Agreement, the Auction, and the transactions contemplated in the Stalking Horse Agreement in an amount not to exceed $250,000 (the "**Expense Reimbursement**"). The Breakup Fee and the Expense Reimbursement shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement and nothing herein shall be deemed to limit or otherwise modify the terms thereof, including other circumstances pursuant to which the Breakup-Up Fee and Expense Reimbursement may be payable.

The Debtor has further agreed that its obligation to pay the Breakup Fee and Expense Reimbursement pursuant to the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement, shall, to the extent owed by the Debtor, constitute an administrative expense claim under section 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be payable under the terms and conditions of the Stalking Horse Agreement and the Bankruptcy Court's order approving these Bidding Procedures.

### III    Sale <u>Hearing</u>

The Debtor will seek entry of an order from the Court at a hearing set for February 8, 2017 to approve and authorize the sale transaction to the Successful Bidder on terms and conditions determined in accordance with the Bidding Procedures (the "**<u>Sale Hearing</u>**").

**Schedule 2**

**(Significant Dates)**

- **Assumption Objection Deadline:**    <u>**January 30, 2017**</u> **at 4:00 p.m. (Pacific Time)**

- **Bid Deadline:**    <u>**February 2, 2017**</u> **at 1:00 p.m. (Pacific Time)**

- **Auction:**    <u>**February 7, 2017**</u> **at 10:00 a.m. (Pacific Time)**

- **Sale Objection Deadline:**    <u>**January 30, 2017**</u> **at 4:00 p.m. (Pacific Time)**

- **Sale Hearing:**    <u>**February 8, 2017**</u> **at __:00 _.m. (Pacific Time)**

**<u>Schedule 3</u>**

**(Auction and Hearing Notice)**

1  Scott F. Gautier (State Bar No. 211742)
   *SGautier@RobinsKaplan.com*
2  Lorie A. Ball (State Bar No. 210703)
   *LBall@RobinsKaplan.com*
3  Kevin D. Meek (State Bar No. 280562)
   *KMeek@RobinsKaplan.com*
4  ROBINS KAPLAN LLP
   2049 Century Park East, Suite 3400
5  Los Angeles, CA  90067
   Telephone:    310 552 0130
6  Facsimile:    310 229 5800

7  *Attorneys for Debtor and Debtor in Possession*

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## LOS ANGELES DIVISION

11

12

13  In re:

14  NASTY GAL INC., a California
    corporation,

15       Debtor and Debtor in Possession.

16

17

Case No.  2:16-bk-24862-BB

Chapter  11

**NOTICE OF SALE PROCEDURES,
AUCTION DATE AND SALE HEARING**

18       **PLEASE TAKE NOTICE** that on   [_____], the above-captioned Debtor and Debtor in

19  possession (the "**Debtor**") filed the Motion of the Debtor and Debtor in Possession Pursuant to

20  sections 105, 362, 363 and 365 of the Bankruptcy Code for an Order (I)(A) approving "stalking

21  horse" asset purchase agreement for the sale of substantially all of the Debtor's intellectual

22  property and customer database assets; (B) approving the Bid Protections; (C) approving

23  procedures in connection with the auction and sale of the Debtor's assets; (D) scheduling the

24  related auction and hearing to consider approval of sale; (E) approving procedures for the

25  assumption and assignment of certain executory contracts and unexpired leases; (F) approving the

26  form and manner of notice thereof; and (G) granting related relief; and (II)(A) authorizing the

27  sale of the Debtor's assets pursuant to the successful bidder's asset purchase agreement free and

28  clear of liens, claims, encumbrances, and other interests; (B) approving the assumption and

27

assignment of certain executory contracts and unexpired leases related thereto; and (C) granting

related relief (the "**Motion**").[1] The Debtor seeks, among other things, to sell all or substantially

all of its intellectual property and customer database assets (the "**Purchased Assets**") to Boohoo

F I Limited (the "**Stalking Horse Purchaser**") or the bidder submitting the highest or otherwise

best offer for the Purchased Assets (such bidder, the "**Successful Bidder**"), at an auction free and

clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a), 363 and

365 of the Bankruptcy Code.

     **PLEASE TAKE FURTHER NOTICE** that, on January 5, 2017, the Bankruptcy Court

entered an order (the "**Bidding Procedures Order**") approving the Motion and the bidding

procedures (the "**Bidding Procedures**"), which set the key dates and times related to the Sale of

the Purchased Assets. All interested bidders should carefully read the Bidding Procedures Order

and the Bidding Procedures. To the extent that there are any inconsistencies between the Bidding

Procedures Order (including the Bidding Procedures) and the summary description of its terms

and conditions contained in this Notice, the terms of the Bidding Procedures Order shall control.

     **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding

Procedures, an auction (the "**Auction**") to sell the Purchased Assets will be conducted on

February 7, 2017 at 10:00 a.m. (Pacific Standard Time) at the offices of at the offices of Debtor's

counsel, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067, or

such later time or such other place as the Debtor, with the consent of the Stalking Horse

Purchaser, shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.

     **PLEASE TAKE FURTHER NOTICE** that a hearing will be held to approve the sale of

the Purchased Assets to the Successful Bidder (the "**Sale Hearing**") before the United States

Bankruptcy Court for the Central District of California, [court address], on **February 8, 2017** at

__:00 _.m. (Pacific Standard Time), or at such time thereafter as counsel may be heard or at such

other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from

time to time without further notice to creditors or parties in interest other than by announcement

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.  Objections to the Sale shall be filed and served **so as to be received no later than 4:00 p.m. (Pacific Standard Time) on January 30, 2017** by: (i) Nasty Gal, Inc., 539 W. 6th Street, Los Angeles, CA (Attn: Joe Scirocco (joe.scirocco@shopnastygal.com)); (ii) counsel to the Debtor: Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 (Attn: Scott F. Gautier (SGautier@RobinsKaplan.com)), (iii) counsel to the Stalking Horse Bidder: Troutman Sanders LLP, 600 Peachtree Street, Suite 5200, Atlanta, GA 30308 (Attn: Harris B. Winsberg (harris.winsberg@troutmansanders.com) and Stephen S. Roach (stephen.roach@troutmansanders.com), (iv) counsel to the Official Committee of Unsecured Creditors: Levene, Neale, Bender, Yoo & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067 (Attn. Gary Klausner (gek@lnbyb.com)) and (v) counsel to the Office of the United States Trustee: Office of the United States Trustee, 915 Wilshire Boulevard, Suite 1850, Los Angeles, CA 90017 (Attn: Ron Maroko)) (collectively, the "**Notice Parties**").

      **PLEASE TAKE FURTHER NOTICE** that this Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, Bidding Procedures Order and Bidding Procedures, which Bidding Procedures Order shall control in the event of any conflict, and the Debtor encourages parties in interest to review such documents in their entirety. Any party that has not received a copy of the Motion or the Bidding Procedures Order that wishes to obtain a copy of the Motion or the Bidding Procedures Order, including all exhibits thereto, may make such a request in writing to Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 (Attn: Scott F. Gautier (SGautier@RobinsKaplan.com)).

Dated:  [_____], 2017         Respectfully submitted,

Scott F. Gautier (State Bar No. 211742)
*SGautier@RobinsKaplan.com*
Lorie A. Ball (State Bar No. 210703)
*LBall@RobinsKaplan.com*
Kevin D. Meek (State Bar No. 280562)
*KMeek@RobinsKaplan.com*
ROBINS KAPLAN LLP

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Telephone: 310 552 0130
Facsimile: 310 229 5800

*Attorneys for Debtor and*
*Debtor in Possession*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Schedule 4

**(Assumption and Assignment Notice)**

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1

Scott F. Gautier (State Bar No. 211742)
*SGautier@RobinsKaplan.com*

2

Lorie A. Ball (State Bar No. 210703)
*LBall@RobinsKaplan.com*

3

Kevin D. Meek (State Bar No. 280562)
*KMeek@RobinsKaplan.com*

4

ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400

5

Los Angeles, CA 90067
Telephone:   310 552 0130

6

Facsimile:    310 229 5800

7

*Attorneys for Debtor and Debtor in Possession*

8

9

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

10

**LOS ANGELES DIVISION**

11

12

13

14

15

16

17

| In re: | Case No.  2:16-bk-24862-BB |
|---|---|
| NASTY GAL INC., a California corporation, | Chapter  11 |
| Debtor and Debtor in Possession. | **NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTOR THAT MAY BE ASSUMED AND ASSIGNED** |

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

32

**PLEASE TAKE NOTICE** that on    [_____], the above-captioned Debtor and Debtor in possession (the "**Debtor**") filed the Motion of the Debtor and Debtor in Possession Pursuant to sections 105, 362, 363 and 365 of the Bankruptcy Code for an Order (I)(A) approving "stalking horse" asset purchase agreement for the sale of substantially all of the Debtor's intellectual property and customer database assets; (B) approving the Bid Protections; (C) approving procedures in connection with the auction and sale of the Debtor's assets; (D) scheduling the related auction and hearing to consider approval of sale; (E) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases; (F) approving the form and manner of notice thereof; and (G) granting related relief; and (II)(A) authorizing the sale of the Debtor's assets pursuant to the successful bidder's asset purchase agreement free and clear of liens, claims, encumbrances, and other interests; (B) approving the assumption and assignment of certain executory contracts and unexpired leases related thereto; and (C) granting related relief (the "**Motion**").  The Debtor seeks, among other things, to sell all or substantially all of its intellectual property and customer database assets (the "**Purchased Assets**") to BooHoo F I, Limited (the "**Stalking Horse Purchaser**") or the bidder submitting the highest or otherwise best offer for the Purchased Assets (such bidder, the "**Successful Bidder**"), at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, on January 5, 2017, the Court entered an Order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures requested in the Motion, which Bidding Procedures Order governs (i) the bidding process for the sale of the "Purchased Assets of the Debtor and (ii) procedures for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Stalking Horse Agreement your contract with the Debtor may be assumed and assigned to the Stalking Horse Purchaser, or to such other Purchaser that may emerge as the Successful Bidder following the Auction (if any) conducted pursuant to the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Motion also seeks Court approval of the sale (the "**Sale**") of the Purchased Assets to the Successful Bidder, free and clear of all liens, claims, interests and encumbrances pursuant to sections 105(a) and 363 of the Bankruptcy Code, including the assumption by the Debtor and assignment to the buyer of certain executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code (the "**Assumed and Assigned Contracts**").[1] Immediately after conclusion of the Auction (if any), the Debtor shall file a notice identifying the Successful Bidder with the Bankruptcy Court and, if the Stalking Horse Purchaser is not the Successful Bidder, serve such notice by fax, email or overnight mail to all counterparties whose contracts are to be assumed and assigned.

**PLEASE TAKE FURTHER NOTICE** that an evidentiary hearing (the "**Sale Hearing**") to approve the Sale and authorize the assumption and assignment of the Assigned Contracts will be held on **February 8, 2016 at __:__ _.m (Pacific Standard Time)**, before the United States Bankruptcy Court for the Central District of California, [address]. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.

**PLEASE TAKE FURTHER NOTICE** that, consistent with the Bidding Procedures Order, the Debtor may seek to assume an executory contract or unexpired lease to which you may be a party. The Assumed and Assigned Contract(s) are described on **Exhibit A** attached to this Notice. The amount shown on **Exhibit A** hereto as the "Cure Amount" is the amount, if any, based upon the Debtor's books and records, which the Debtor asserts is owed to cure any defaults existing under the Assumed and Assigned Contract.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount

---

[1] "Assumed and Assigned Contracts" are those contracts and leases that the Debtor believes may be assumed and assigned as part of the orderly transfer of the Purchased Assets; however, (i) the Stalking Horse Purchaser may exclude contracts and leases from the list of Assumed and Assigned Contracts as provided in the Stalking Horse Agreement, and (ii) if different, the Successful Bidder may choose to exclude certain of the Debtor's contracts or leases from the list of Assumed and Assigned Contracts as part of their Qualifying Bid, causing such contracts and leases not to be assumed by the Debtor.

shown for the Assumed and Assigned Contract(s) on **Exhibit A** to which you are a party, you

must file in writing with the United States Bankruptcy Court for the Central District of California,

[address], an objection on or before **January 30, 2017 at 4:00 p.m. (Pacific Standard Time)**.

Any objection must set forth the specific default or defaults alleged and set forth any cure amount

as alleged by you. If a contract or lease is assumed and assigned pursuant to a Court order

approving same, then unless you properly file and serve an objection to the Cure Amount

contained in this Notice, you will receive at the time of the closing of the sale (or as soon as

reasonably practicable thereafter), the Cure Amount set forth herein, if any. Any non-Debtor

party to an Assigned Contract that fails to timely file and serve an objection to the Cure Amounts

shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the

amount, if any, set forth in the attached **Exhibit A**.

      **PLEASE TAKE FURTHER NOTICE** that if you have any other objection to the

Debtor's assumption and assignment of the Assigned Contract to which you may be a party, you

also must file that objection in writing on or before **January 30, 2017 at 4:00 p.m. (Pacific**

**Standard Time)**; provided, however, if any bidder other than the Stalking Horse Purchaser is the

Successful Bidder, then any counterparty to an Assumed and Assigned Contract may file and

serve an objection to the assumption and assignment of the Assumed and Assigned Contract

solely with respect to the Successful Bidder's ability to provide adequate assurance of future

performance under the Assumed and Assigned Contract up to the time of the Sale Hearing, or

raise it at the Sale Hearing.

      **PLEASE TAKE FURTHER NOTICE** that any objection you may file must be served

so as to be received by the following parties by the applicable objection deadline date and time:

(i) Nasty Gal, Inc., 539 W. 6th Street, Los Angeles, CA (Attn: Joe Scirocco

(joe.scirocco@shopnastygal.com)); (ii) counsel to the Debtor: Robins Kaplan LLP, 2049 Century

Park East, Suite 3400, Los Angeles, CA 90067 (Attn: Scott F. Gautier

(SGautier@RobinsKaplan.com)), (iii) counsel to the Stalking Horse Bidder: Troutman Sanders

LLP, 600 Peachtree Street, Suite 5200, Atlanta, GA 30308 (Attn: Harris B. Winsberg

(harris.winsberg@troutmansanders.com) and Stephen S. Roach

(stephen.roach@troutmansanders.com), (iv) counsel to the Official Committee of Unsecured

Creditors: Levene, Neale, Bender, Yoo & Brill LLP, 10250 Constellation Blvd., Suite 1700, Los

Angeles, CA 90067 (Attn. Gary Klausner (gek@lnbyb.com)) and (v) counsel to the Office of the

United States Trustee: Office of the United States Trustee, 915 Wilshire Boulevard, Suite 1850,

Los Angeles, CA 90017 (Attn: Ron Maroko)) (collectively, the "**Notice Parties**").

**PLEASE TAKE FURTHER NOTICE** that the buyer shall be responsible for satisfying

any requirements regarding adequate assurance of future performance that may be imposed under

sections 365(b) and (f) of title 11 of the United States Code §§ 101-1532 (the "**Bankruptcy**

**Code**"), in connection with the proposed assignment of any Assumed and Assigned Contract. The

Court shall make its determinations concerning adequate assurance of future performance under

the Assigned Contracts pursuant to 11 U.S.C. §§ 365(b) and (f) at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, in the event that the Debtor and the non-

Debtor party cannot resolve the Cure Amount, the Debtor shall segregate any disputed Cure

Amounts ("**Disputed Cure Amounts**") pending the resolution of any such disputes by the Court

or mutual agreement of the parties. Assumption Objections may be resolved by the Court at the

Sale Hearing, or at a separate hearing either before or after the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that, except to the extent otherwise provided in

the Purchase Agreement with the Successful Bidder, pursuant to section 365(k) of the Bankruptcy

Code, the Debtor and the Debtor's estate shall be relieved of all liability accruing or arising after

the effective date of assumption and assignment of the Assumed and Assigned Contracts.

**PLEASE TAKE FURTHER NOTICE** that nothing contained herein shall obligate the

Debtor to assume any Assumed and Assigned Contracts or to pay any Cure Amount.

**PLEASE TAKE FURTHER NOTICE** THAT IF YOU DO NOT TIMELY FILE AND

SERVE AN OBJECTION AS STATED ABOVE, THE COURT MAY GRANT THE RELIEF

REQUESTED IN THE MOTION WITH NO FURTHER NOTICE.

ANY NON-DEBTOR PARTY TO ANY ASSIGNED CONTRACT WHO DOES NOT

1  FILE A TIMELY OBJECTION TO THE CURE AMOUNT FOR SUCH ASSIGNED

2  CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.

3

4

5  Dated:  [_____], 2017          Respectfully submitted,

6                                         Scott F. Gautier (State Bar No. 211742)
                                          *SGautier@RobinsKaplan.com*
7                                         Lorie A. Ball (State Bar No. 210703)
                                          *LBall@RobinsKaplan.com*
8                                         Kevin D. Meek (State Bar No.
                                          280562)*KMeek@RobinsKaplan.com*
9                                         ROBINS KAPLAN LLP
                                          2049 Century Park East, Suite 3400
10                                        Los Angeles, CA 90067
                                          Telephone: 310 552 0130
11                                        Facsimile: 310 229 5800

12                                        *Attorneys for Debtor and*
                                          *Debtor in Possession*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

61273515.1                        36                        Exh. A-36

37

1

**EXHIBIT A**

2

**(Assigned Contracts)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38